IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

LISA ANN SHINKLE,               )
                                    )
               Plaintiff,     )
                                    )
         v.               )     Case No.4:12-cv-1262-REL-SSA
                                    )
CAROLYN COLVIN, Acting Commissioner   )
of Social Security,              )
                                    )
               Defendant.   )

## ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Lisa Ann Shinkle seeks review of the final decision of the Commissioner of

Social Security denying plaintiff's application for supplemental security income benefits under

Title XVI of the Social Security Act ("the Act"). Plaintiff argues that the Administrative Law

Judge (ALJ) erred (1) when he gave "no weight" to the opinion of her treating oncologist; (2)

by weighing the opinion of a single decision maker (SDM); (3) by failing to properly assess

plaintiff's residual functional capacity (RFC); and (4) when he found that plaintiff was capable

of performing more than sedentary work at step five of the sequential evaluation. I find that

the substantial evidence in the record as a whole supports the ALJ's conclusion that plaintiff

was not disabled. Therefore, plaintiff's motion for summary judgment will be denied and the

decision of the Commissioner will be affirmed.

## I.    BACKGROUND

On October 30, 2008, plaintiff protectively applied for supplemental security income

benefits alleging that she had been disabled since February 2, 2007 (Tr. 185-90). Plaintiff's

disability was due to a combination of physical and mental impairments. On March 2, 2009,

plaintiff's application was denied at the initial level (Tr. 99-104).

On August 20, 2010, a hearing was held before an ALJ (Tr. 34-43). On September 20,

2010, the ALJ found that plaintiff was under a disability as defined in the Act (Tr. 81-89).

However, on December 8, 2010, the Appeals Council, on its own motion, reviewed the

September 20, 2010 decision, vacated the September 20, 2010 decision, and remanded plaintiff's claim for further proceedings (Tr. 90-95).

On April 12, 2011, a hearing was held before a different ALJ (Tr. 44-70).[1] On May 26, 2011, the ALJ found that plaintiff was not under a disability as defined in the Act (Tr. 7-30). On August 27, 2012, the Appeals Council denied plaintiff's request for review (Tr. 1-6). Therefore, the May 26, 2011 decision of the ALJ stands as the final decision of the Commissioner.

## II.    STANDARD FOR JUDICIAL REVIEW

Section 205(g) of the Act, 42 U.S.C. § 405(g), provides for judicial review of a "final decision" of the Commissioner. The standard for judicial review by the federal district court is whether the decision of the Commissioner was supported by substantial evidence. 42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Mittlestedt v. Apfel, 204 F.3d 847, 850-51 (8th Cir. 2000); Johnson v. Chater, 108 F.3d 178, 179 (8th Cir. 1997); Andler v. Chater, 100 F.3d 1389, 1392 (8th Cir. 1996). The determination of whether the Commissioner's decision is supported by substantial evidence requires review of the entire record, considering the evidence in support of and in opposition to the Commissioner's decision. Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); Thomas v. Sullivan, 876 F.2d 666, 669 (8th Cir. 1989). "The Court must also take into consideration the weight of the evidence in the record and apply a balancing test to evidence which is contradictory." Wilcutts v. Apfel, 143 F.3d 1134, 1136 (8th Cir. 1998) (citing Steadman v. Securities & Exchange Commission, 450 U.S. 91, 99 (1981)).

Substantial evidence means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. at 401; Jernigan v. Sullivan, 948 F.2d 1070, 1073 n. 5 (8th Cir. 1991).

---

[1] The original decision was issued by an ALJ from the National Hearing Office in Albuquerque, New Mexico that was assisting the Kansas City, Missouri Hearing Office. The National Hearing Office is no longer assisting the Kansas City Hearing Office. Therefore, on remand, the claim was assigned to an ALJ in the Kansas City Hearing Office.

However, the substantial evidence standard presupposes a zone of choice within which the decision makers can go either way, without interference by the courts. "[A]n administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision." Id. Clarke v. Bowen, 843 F.2d 271, 272-73 (8th Cir. 1988).

## III.  BURDEN OF PROOF AND SEQUENTIAL EVALUATION PROCESS

An individual claiming disability benefits has the burden of proving she is unable to return to past relevant work by reason of a medically-determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). If the plaintiff establishes that she is unable to return to past relevant work because of the disability, the burden of persuasion shifts to the Commissioner to establish that there is some other type of substantial gainful activity in the national economy that the plaintiff can perform. Nevland v. Apfel, 204 F.3d 853, 857 (8th Cir. 2000); Brock v. Apfel, 118 F. Supp. 2d 974 (W.D. Mo. 2000).

The Social Security Administration has promulgated detailed regulations setting out a sequential evaluation process to determine whether a claimant is disabled. These regulations are codified at 20 C.F.R. §§ 404.1501, et seq. The five-step sequential evaluation process used by the Commissioner is outlined in 20 C.F.R. § 404.1520 and is summarized as follows:

1.      Is the claimant performing substantial gainful activity?

> Yes = not disabled.
> No = go to next step.

2.      Does the claimant have a severe impairment or a combination of impairments which significantly limits her ability to do basic work activities?

> No = not disabled.
> Yes = go to next step.

3.      Does the impairment meet or equal a listed impairment in Appendix 1?

> Yes = disabled.
> No = go to next step.

4.      Does the impairment prevent the claimant from doing past relevant work?

No = not disabled.
Yes = go to next step where burden shifts to Commissioner.

5.     Does the impairment prevent the claimant from doing any other work?

Yes = disabled.
No = not disabled.

## IV.     THE RECORD

The record consists of the testimony of plaintiff at the August 20, 2010 and April 12, 2011 hearings, the testimony of vocational expert Amy L. Salva at the April 12, 2011 hearing, and documentary evidence admitted at the April 12, 2011 hearing.

## A.     ADMINISTRATIVE REPORT

The record contains the following administrative report which shows plaintiff earned the following income from 1979 through 1996:

| Year | Earnings | Year | Earnings |
|------|----------|------|----------|
| 1979 | $1,046.00 | 1988 | $    .00 |
| 1980 | 1,068.38 | 1989 | .00 |
| 1981 | .00 | 1990 | .00 |
| 1982 | .00 | 1991 | .00 |
| 1983 | .00 | 1992 | .00 |
| 1984 | .00 | 1993 | 132.06 |
| 1985 | .00 | 1994 | 161.50 |
| 1986 | .00 | 1995 | .00 |
| 1987 | .00 | 1996 | 596.39 |

(Tr. 195).

## B.     SUMMARY OF MEDICAL RECORDS

As summarized by both plaintiff and the Commissioner, the medical record reflects diagnosis and treatment of multiple medical problems including migraine headaches,

hyperlipidemia, depression, anxiety, history of thyroid cancer, vision loss on the left, irritable

bowel syndrome (IBS), tonsillitis, back pain, and vaginal prolapse.

## C.    SUMMARY OF TESTIMONY

During the August 20, 2010 and April 12, 2011 hearings, plaintiff testified. During the

April 12, 2011 hearing, Amy Salva, a vocational expert, testified at the request of the ALJ.

### 1.    Plaintiff's Testimony

Plaintiff testified that she was 50 years old at the time of both hearings. Plaintiff said

that she stands 5'2" tall, weighs 140 pounds, graduated from high-school, and is right handed.

Plaintiff reported her husband passed away on March 20, 2011; however, they had been

separated since 2010. Plaintiff related that she last worked in 1998 or 1999 (Tr. 37, 41,

47-50).

When questioned about why she is unable to work, plaintiff testified that she has

bilateral eye problems (Tr. 37, 39-40, 41-42, 49-53).

In addition to the vision problems, plaintiff described aches and pains in her eyes, knee,

back, and elbow. Furthermore, plaintiff said she has rectocele and migraine headaches (Tr.

37-38, 42, 54, 56-58).

Beyond her physical problems, plaintiff reported that she is anxious, is depressed, has

trouble sleeping, and does not like to go out (Tr. 41, 53-55).

### 2.    Vocational Expert Testimony

Amy L. Salva, vocational expert, testified at the request of the ALJ. The expert opined

that plaintiff had not engaged in substantial gainful activity during the last 15 years.

The ALJ posed a hypothetical question with a limitation to light work (Tr. 71). The

hypothetical individual could lift up to 20 pounds occasionally and 10 pounds frequently;

could stand and/or walk about six hours in an eight hour day; could sit up to six hours in an

eight hour day; could occasionally balance, climb stairs, stoop, kneel, crouch, crawl; could

never climb ladders, ropes, and scaffolds; could occasionally, but not continually, handle and finger bilaterally; needed to avoid concentrated exposure to bright lights and noise; and, as a result of loss of concentration, persistence, and pace, was limited to simple, unskilled work with a specific vocational preparation (SVP) of 2 or less. The expert opined that such an individual would be able to perform light unskilled occupations including electronics sub-assembler, retail marker, and cashier (Tr. 72).

The ALJ posed a second hypothetical question that reduced the exertional level to sedentary, but retained the remainder of the exertional and non-exertional limitations. The expert excluded the three previous unskilled jobs since they are light, but she opined that the hypothetical individual could perform sedentary unskilled jobs including circuit board assembler, document scanner, and ampoule sealer (Tr. 73)

When the original hypothetical was further modified to include an inability to work an eight-hour day, forty-hour week on an ongoing and consistent basis, the expert opined that the identified jobs would not be available and that there would be no other full-time competitive jobs in the national economy (Tr. 74).

When referred to a February 27, 2009 *Mental Residual Functional Capacity Assessment* form and to plaintiff's April 12, 2011 testimony, the expert opined that competitive employment would be precluded by either assessment (Tr. 74-75).

## V.    FINDINGS OF THE ALJ

ALJ Guy E. Taylor entered his decision on May 26, 2011. The ALJ found that plaintiff has not worked since filing her claim on October 3, 2008 (Tr. 12). The ALJ determined that plaintiff's migraine headaches, hyperlipidemia, depression, and anxiety are severe impairments, but her history of thyroid cancer, vision loss on the left, IBS, tonsillitis, back pain, and vaginal prolapse are non-severe impairments (Tr. 13). The ALJ found that none of plaintiff's impairments meet or equal the severity requirements of a Listing (Tr. 13-15). The

ALJ found that plaintiff retains the RFC to perform less than a full range of light work (Tr. 15-22). While the ALJ found that the plaintiff has no past relevant work, the ALJ also found that there are other jobs existing in significant numbers in the national economy that plaintiff can perform. The ALJ concluded that plaintiff is not disabled.

## VI.  *ANALYSIS*.

## A.    WEIGHING MEDICAL OPINIONS

Plaintiff first argues that the ALJ failed to give proper weight to treating, examining, and consulting sources. As to treating sources, plaintiff argues that the ALJ erred by giving no weight to the opinion of her treating oncologist, should have given his opinion controlling weight, and should have recontacted him before rejecting his opinion.

The Commissioner argues that the ALJ had good cause to reject the opinion of plaintiff's treating oncologist: (1) the lack of objective medical evidence supporting the opinion; (2) the opinions of other medical providers, specialists in vision and neurological impairments, which contradicted the opinion of the treating oncologist; and (3) more recent medical reports failing to contain continuing complaints of disabling blindness. The Commissioner argues that the ALJ need not recontact the oncologist due to the inherent unreliability of the opinion.

Medical source statements are medical opinions submitted by acceptable medical sources, including treating sources and consultative examiners, about what an individual can still do despite a severe impairment(s), in particular about an individual's physical or mental abilities to perform work-related activities on a sustained basis. SSR 1996-5; 20 C.F.R. §404.1513(a) (defining "acceptable medical source"). Generally, the opinions of an examining psychologist or physician should be given greater weight that the opinions of a source who had not examined a claimant. Shontos v. Barnhart, 328 F.3d 418, 425 (8th Cir. 2003).

The opinion of a treating physician is "generally given controlling weight, but is not inherently entitled to it." Travis v. Astrue, 477 F.3d 1037, 1041 (8th Cir. 2007)(quoting

<u>Hacker v. Barnhart</u>, 439 F.3d 934, 937 (8th Cir. 2006). An ALJ may elect not to give controlling weight to a treating physician when their opinions are "not supported by diagnoses based on objective evidence" or if the opinions are "inconsistent with or contrary to the medical evidence as a whole." <u>Id</u>. A treating physician's opinions may be entitled to less weight if the opinions are not supported by his or her own treatment notes. <u>Owen v. Astrue</u>, 551 F.3d 792, 789-99 (8th Cir. 2008).

On review of the medical record, I find numerous opinions by treating and examining doctors as to both plaintiff's blindness and her headaches.

On July 18, 2007, plaintiff was seen by Steven F. Charochak, D.O., complaining of headaches. Plaintiff also complained of headaches when seen by the physician on November 6 and December 4, 2007 (Tr. 531-42). Dr. Charochak referred plaintiff to Karin Olds, M.D., for a neurological examination. Although complaining of both headaches and severe vision problems, Dr. Olds' January 31, 2008 neurological examination was normal with the exception of nystagmus. Dr. Olds recommended that plaintiff seek psychiatric help; told plaintiff that she was experiencing a rebound headache due to her overuse of over-the-counter (OTC) medication and Ambien; and recommended exercise and diet (Tr. 623). The ALJ gave this opinion significant weight (Tr. 22).

Plaintiff has a history of treatment for thyroid cancer by Christopher F. Sirridge, M.D., an oncologist.[2]  On March 1, 2008, while plaintiff had no particular issues in relationship to her cancer, she complained of tremendous problems with her eyes. Ophthalmoscopic examination was relatively unremarkable: there was some paleness over the macular areas, but disc appeared to be sharp; plaintiff had good venous pulsations; there were no hemorrhages or exudates, although extraocular muscles were weak in the lateral areas, plaintiff moved them fairly appropriately; plaintiff had no vertical or horizontal nystagmus; and plaintiff had no

---

[2] As to the cancer, in 2007 and 2008, a CT/PET scan showed no evidence of recurrent lesions and plaintiff had no metastatic symptoms of thyroid cancer, she had no weight loss, her appetite was good, and there were no complaints of bone pain (Tr.

increase in palpebral fissure (Tr. 615).

Since Dr. Sirridge is a cancer specialist, not an eye specialist, he referred plaintiff to Thomas J. Whitaker, M.D., a neuro-ophthalmologist at the University of Kansas Medical Center. On April 14, 2008, plaintiff's visual acuity was minimally decreased at 20/40 on the right and 20/60 on the left. Plaintiff had normal pupils and color vision. External examination and optic nerves were both normal. Plaintiff had a greater than 50-diopter left esotropia, which was apparently longstanding. Visual-field testing showed some concentric field defects in a non-homonymous pattern. Slit lamp examination was noteworthy for dry eye changes. Fundoscopic examination showed healthy optic nerves without nerve fiber layer pallor, edema, or hemorrhage. Plaintiff had slight granularity to the retinal pigment epithelium of the macula (Tr. 590). On October 14, 2008, Dr. Whitaker concluded that while there had been some technical deficiencies in plaintiff's ERG recording, the test was "completely normal in every respect." The physician also noted normal MRIs and ophthalmological examination. Dr. Whitaker concluded that plaintiff's painless and progressive loss of vision was functional (Tr. 500). On April 28, 2009, the physician again measured a visual acuity of 20/40 on the right and 20/60 on the left (Tr. 496). The ALJ gave Dr. Whitaker's opinions significant weight (Tr. 22).

Despite his own relatively benign findings in March 2008 and Dr. Whitaker's relatively benign findings in April 2008, on September 3, 2008, Dr. Sirridge opined that plaintiff was disabled due to blindness; said that plaintiff could not drive or work; concluded that plaintiff was totally disabled because of lateral field blindness; and encouraged plaintiff to seek a disability attorney (Tr. 613). The ALJ found that the part of Dr. Sirridge's opinion that described plaintiff as disabled due to blindness related to an issue reserved to the Commissioner and was not entitled to controlling weight. The ALJ also found that Dr. Sirridge treated plaintiff for thyroid cancer; the physician is not a specialist in optometry,

613).

ophthalmology, or neurology; and that Dr. Sirridge relied heavily on plaintiff's subjective complaints. The ALJ gave the opinion no weight (Tr. 22).

Plaintiff continued to complain of migraines and vision problems. Dr. Sirridge referred plaintiff to Sarah J. Hon, D.O., a neurologist, who conducted a June 15, 2009 neurological examination, which was unremarkable except for a mild tendency for plaintiff's left eye to deviate medically and upward. Plaintiff stated that this was a lifelong phenomenon related to her amblyopia. Dr. Hon suspected that plaintiff's headaches and visual disturbance were related and recommended treatment of the headaches (Tr. 471-72). Although scheduled for a three-month follow-up, plaintiff did not return to Dr. Hon for further treatment. The ALJ gave Dr. Hon's opinions significant weight (Tr. 22).

The ALJ also pointed out that Dr. Charochak's records from 2009 and 2010 reveal no complains of eye trouble (Tr. 683-99).

I find that it was appropriate for the ALJ to give significant weight to the findings and opinions of Dr. Whittaker, a specialist in vision, significant weight to the opinions of Dr. Olds and Dr. Hon, specialists in neurology, and no weight to Dr. Sirridge, a cancer specialist, on the topic of blindness, especially considering the lack of meaningful abnormal clinical signs elicited by Dr. Sirridge. Considering the results of the examinations by Dr. Whittaker and Dr. Hon., the specialists to whom Dr. Sirridge referred plaintiff, there was no need for the ALJ to re-contact Dr. Sirridge.

Next, plaintiff objects to the ALJ mentioning an opinion by a single-decision marker (SDM).

On February 27, 2009, Kelly S. Smith, a DDS SDM, opined that plaintiff retained the ability to perform less than a full range of light work (Tr. 515-20). The ALJ said he gave this opinion little weight since it was not from an acceptable medical source (Tr. 22).

A SDM is not a medical source and his/her opinion is not due any significant weight.

<u>Dewey v. Astrue</u>, 509 F.3d 447, 449 (8th Cir.2007). The ALJ may not rely on a SDM opinion.

<u>Kettering v. Astrue</u>, 4:11CV646 RWS FRB, 2012 WL 3871995 (E.D. Mo. Aug. 13, 2012) report and recommendation adopted, 4:11CV646 RWS, 2012 WL 3872021 (E.D. Mo. Sept. 6, 2012) ("In addition, while the ALJ considered [the SDM's] opinion, he properly did not rely on it in making his determination as to plaintiff's RFC.").

Plaintiff argues that giving any weight, even little weight, to the opinion of the SDM is reversible error that requires remand. In response, the Commissioner argues that the ALJ was acknowledging that the opinion of a SDM is not entitled to any significant weight; the ALJ gave the opinion little weight; and the ALJ's RFC differs from the SDM's RFC.

I agree that the ALJ's brief mentioning of the SDM is not reversible error.

Finally, plaintiff argues the ALJ should have included in the RFC additional non-exertional limitations based upon an opinion by a psychological consultant.

On February 27, 2009, Marsha Toll, Psy.D., a Missouri Disability Determinations Service (DDS) psychological consultant, opined that plaintiff's depression and anxiety were severe impairments. The consultant opined that the mental impairments caused mild restriction of actives of daily living, moderate difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation. Dr. Toll also opined that plaintiff was not significantly limited in 12 work-related areas, moderately limited in eight work-related areas; and markedly limited in zero work-related areas (Tr. 501-14).

However, Dr. Toll is neither a treating nor an examining physician. The ALJ gave less weight to Dr. Toll's opinion because the DDS psychological consultant did not have the benefit of additional evidence received at the hearing level (Tr. 22). Nevertheless, the ALJ limited plaintiff to simple, unskilled work of SVP 2 or less due to the plaintiff's mental problems (Tr. 15).

I defer to the ALJ as to which mental limitations are appropriate.

In summary, I find that substantial evidence on the record as a whole supports the ALJ's weighing of the opinion evidence.

## B.    RFC ASSESSMENT

Next, plaintiff contends that the ALJ erred in his assessment of plaintiff's RFC. Plaintiff argues that the RFC is not supported by the evidence because the ALJ found Dr. Sirridge's opinion was entitled to no weight; Drs. Olds, Whittaker, and Hon were primarily focused on plaintiff's vision problems; the opinions of Drs. Olds, Whittaker, and Hon lacked specific work related limitations; and Dr. Toll's opinion was given little weight.

The Commissioner responds that the ALJ properly based his RFC on the record as a whole, e.g., plaintiff's medical records, the opinions of treating, examining, and consulting physicians, plaintiff's daily activities, and plaintiff's credibility.

An ALJ does not have to rely entirely on a doctor's opinion, nor is he or she limited to a simple choice of the medical opinions of record when he or she formulates the residual functional capacity. Martise v. Astrue, 641 F.3d 909, 927 (8th Cir. 2011) ("[T]he ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions [of] any of the claimant's physicians") (internal citations omitted). Chapo v. Astrue, 682 F.3d 1285, 1288 (10th Cir. 2012) ("[T]here is no requirement in the regulations for a direct correspondence between a residual functional capacity finding and a specific medical opinion on the functional capacity in question."). The RFC assessment is specifically reserved to the Commissioner and the ALJ, not a plaintiff's doctors. The Commissioner uses medical sources to "provide evidence" regarding several factors, including residual functional capacity, but the "final responsibility for deciding these issues is reserved to the Commissioner." 20 C.F.R. § 416.927(d)(2).

An ALJ may make his own assessment based on his review of the record as a whole.

Steed v. Astrue, 524 F.3d 872, 865 (8th Cir. 2008) (ALJ's residual functional capacity finding based upon diagnostic tests and examination results); Halverson v. Astrue, 600 F.3d 922, 933-34 (8th Cir. 2010).

An ALJ's decision should reflect a careful consideration of [plaintiff's] subjective complaints in light of the record as a whole before formulating the RFC. Wiese v. Astrue, 552 F.3d 728, 733-34 (8th Cir. 2009) (disagreeing with Wiese's contention that the ALJ's credibility findings were conclusory and insufficiently explained; noting a significant portion of the decision was devoted to a discussion of credibility, treatment history). Pain and mental limitations are a subjective experience, and in recognition of this fact, regulations require the ALJ to analyze the credibility of a claimant's subjective complaints of pain by assessing: (1) the claimant's daily activities; (2) the duration, frequency and intensity of pain; (3) dosage, effectiveness, and side effects of medication; (4) precipitating and aggravating factors; and (5) functional restrictions. Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). See also Lowe v. Apfel, 226 F.3d 969, 971-72 (8th Cir. 2000); 20 C.F.R § 416.928 .

An ALJ may consider a variety of factors when evaluating a plaintiff's credibility including work history. Pearsall v. Massanari, 274 F.3d 1211, 1218 (8th Cir. 2001); Woolf v. Shalala, 3 F.3d 1210, 1214 (8th Cir.1993) (claimant's credibility is lessened by a poor work history).

The burden of production shifts to the Commissioner at step five to produce vocational evidence of other work claimant can perform. However, the Commissioner is not required at step five to reestablish or prove the RFC formulated at step four. Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."); Charles v. Barnhart, 375 F.3d 777, 782 n.5 (8th Cir. 2004).

As noted above, the ALJ considered not only the opinions by the various treating and

examining physicians, but also the objective clinical signs and laboratory findings elicited by the medical sources. Although Dr. Whitaker and his colleagues focused on plaintiff's vision, both Dr. Olds and Dr. Hon conducted complete neurological examinations. To evaluate both the headaches and the vision complaints, plaintiff underwent a brain MRI, which was normal. There are also medical records from two different family physicians that are inconsistent with plaintiff's allegations as to severity or frequency of symptoms. The ALJ discussed Dr. Toll's consultative opinion. The ALJ evaluated plaintiff's daily activities, work history, treatment modalities, and the fact that there was no specific incident on the alleged disability onset date. Reports from the treating and examining oncologist, family physicians, neurologists, and ophthalmologist all discussed plaintiff's mental health.

Plaintiff argues that the ALJ should have supplemented the record by ordering consultative examinations.

An ALJ orders consultative medical examinations when the evidence as a whole is not sufficient to support a decision on a claim. 20 C.F.R. §§ 404.1519a(b) and 416.919a(b). There was more than enough evidence to decide plaintiff's claim. Tellez v. Barnhart, 403 F.3d 953, 956-57 (8th Cir. 2005). The ALJ was not required to seek additional medical opinions under these circumstances. McCoy v. Astrue, 648 F.3d 605, 612 (8th Cir. 2011) (noting that the duty to develop the record "is not never-ending and an ALJ is not required to disprove every possible impairment").

I defer to the ALJ's decision that the record is adequate to make a decision without the need for further development.

The RFC is consistent with the record as a whole.

## C.    STEP FIVE

Finally, plaintiff argues that the ALJ erred when he found that she was capable of performing *more* than sedentary work because a sedentary RFC would direct a finding of

disabled under Rule 201.12 of Table No. 1, the Medical-Vocational Guidelines, "the Grid."

The Commissioner responds that the ALJ correctly found an ability to perform light work. The Commissioner notes that although the ALJ included non-exertional limitations due to plaintiff's emotional problems, he did not find Dr. Toll's opinion entitled to more than little weight.

The ALJ's residual functional capacity and hypothetical question need only include the limitations that he or she finds are substantially supported by the record as a whole. _Lacroix v. Barnhart_, 465 F.3d 881, 889 (8th Cir. 2006). Discredited subjective complaints are properly excluded from a hypothetical question so long as the ALJ had reason to discredit them. Guilliams v. Barnhart, 393 F.3d 798, 804 (8th Cir. 2005). Here, because the residual functional capacity and hypothetical question included those impairments the ALJ found credible, and excluded those he discredited for legally sufficient reasons, the expert's testimony that plaintiff could perform work existing in significant numbers, was substantial evidence in support of the ALJ's determination. See Martise, 641 F.3d at 927; Gragg v. Astrue, 615 F.3d 932, 941 (8th Cir. 2010).

If the exertional level falls between two rules which direct opposite conclusions., i.e., not disabled at the higher exertional level and disabled at the lower exertional level, consider as follows: . . . . (c.) In situations where the rutile's would direct different conclusions, and the individual's exertional limitations are somewhere "in the middles" in the terms of regulatory criteria for exertional range of work more difficulty judgments are involved as to the sufficiency of the remaining occupational base to support a conclusion as to disability. SSR 83-12.

First, plaintiff was born on August 16, 1960 (Tr. 185). Plaintiff was only 46 years old on February 2, 2007, the alleged disability onset date, and 48 years old on October 30, 2008, the date she filed her claim. Plaintiff was classified as a younger individual, for which the Rules

201.21 of Table No. 1 (sedentary) and 202.20 of Table No. 2 (light) both direct a finding of not disabled through August 16, 2010. Furthermore, the expert was able to identify sedentary, unskilled jobs that plaintiff could perform with the remaining limitations before her 50th birthday.

The dispute is therefore limited to the period beginning on August 16, 2010, because Rule 201.12 of Table No. 1 (sedentary) directs a finding of disabled while Rule 202.13 of Table No. 2 (light) directs a finding of not disabled. In view of conflicting Rules, the ALJ - as required by SSR 83-12 - solicited an expert opinion. The expert identified three different light, unskilled occupations that plaintiff could perform within the provisions of the hypothetical. I find no challenge by plaintiff that the expert's response was inconsistent with the proffered hypothetical. Accordingly, the expert's testimony that plaintiff could perform other work constitutes substantial evidence supporting the Commissioner's decision. Grag at 941.

Plaintiff's arguments essentially relate to the formulation of the RFC and the weight to be given Dr. Toll's opinion, which were already addressed elsewhere in this decision. For the reasons previously discussed, I find that the ALJ properly weighed the medical opinions and properly assessed plaintiff's RFC.

## VII.  CONCLUSIONS

Based on all of the above, I find that the substantial evidence in the record as a whole supports the ALJ's decision finding plaintiff not disabled. Therefore, it is

ORDERED that plaintiff's motion for summary judgment is denied. It is further

ORDERED that the decision of the Commissioner is affirmed.

/s/ Robert E. Larsen
ROBERT E. LARSEN
United States Magistrate Judge

March 7, 2014
Kansas City, Missouri